## Excelsior White Lime Company *v.* Rieff.

## Opinion delivered April 7, 1913.

1. Reference—Master appointed when.—When the transactions between litigants have been complicated and the chancellor has refused to refer the matter, but stated an account himself, and it does not appear that his findings are supported by a preponderance of the testimony, in order that no injustice be done the parties, the cause will be reversed and remanded with directions to the chancellor to refer the record to a master to state an account. (Page 559.)

2. Receivers—Fees—Costs.—Where R, manager of defendant company, brought suit for unpaid salary and prayed for a receiver, who was appointed, and defendant answered, and asked an accounting, charging misappropriation of its funds by R, and the court found that no salary was due R, and that R had not misappropriated the company's funds, all costs will be assessed against R, and it appearing that there was no justification for the suit or appointment of a receiver, R will be charged with payment of the receiver's fees. (Page 560.)

3. Receivers—Fees.—A receiver is entitled to his fees although there was no authority or justification for the suit or his appointment, and the receiver's fee will be ordered paid out of the funds in his hands, belonging to defendant company, but the defendant will have judgment over against the plaintiff for the amount of same. (Page 560.)

4. Receivers—When appointed—Discretion of chancellor—Notice to adverse interests.—The right to the appointment of a receiver is not an absolute one, and while the chancellor must exercise his discretion in determining whether the appointment shall be made, that discretion should be exercised only when a *prima facie* showing has in good faith been made by the party asking that it be done, and only in exceptional cases should it be done without giving notice to the adverse interests. (Page 561.)

Appeal from Washington Chancery Court; *T. H. Humphries,* Chancellor; reversed.

*B. R. Davidson,* for appellant.

1. Appellee was a trustee and a strict accounting was required at his hands. 121 Ala. 131; 41 Ark. 264; 32 Pa. St. 495; 25 Ark. 219; 97 *Id.* 228; 28 A. & E. Enc. L. 1076.

2. The burden was on appellee to show a proper disbursement of the funds in his hands. 96 Ark. 299; 193

Pa. St. 294; 28 A. & E. Enc. L. 1095. He was bound to keep clean and accurate accounts. Perry on Trusts, vol. 2, § 821; 28 A. & E. Enc. L. 1095.

3. Under the evidence the court erred in its findings, in stating the account and in requiring appellant to pay the expenses and fees of the receiver. Appellee is not a creditor and there was no necessity for a receiver.

*H. L. Pearson,* for appellee.

1. The court did narrowly scrutinize all the transactions of appellee as a trustee. 41 Ark. 264. The findings of the chancellor are sustained by the evidence and should not be reversed. 73 Ark. 377; 65 *Id.* 116; 70 *Id.* 136; 74 *Id.* 336.

2. A receiver was properly appointed. Kirby's Dig., § 954.

3. The costs were in the sound discretion of the court. 66 Ark. 709.

SMITH, J. This action was brought in the Washington Chancery Court against the appellant on the 15th day of August, 1911. The complaint alleged that the defendant was a corporation, organized under the laws of this State and engaged in the manufacture and sale of lime near Prairie Grove in that county. The complaint set out the names of the stockholders and the amount of stock owned by each; and alleged that appellee was the owner of $5,000 of the total capital stock of $25,000. The complaint further alleged that the assets of the corporation amounted to $2,276.05, and that its liability, including the capital stock, was $26,597.08. The plaintiff alleged that the corporation was indebted to him for work and labor in the sum of $420, and that W. H. Hays, as president of the corporation, was dissipating the assets of said corporation; and that said corporation was insolvent; and there was a prayer for judgment for the sum sued for; and the appointment of a receiver; and that the affairs of the corporation be wound up, and for general relief. The court appointed a receiver on the day the complaint was filed, who qualified and entered

upon the discharge of his duties, and no complaint appears to have been made as to his administration of the assets of this corporation; and he made a final report, which was approved, and he was discharged after having a fee fixed for his services by the court, which was ordered to be paid out of the assets of the corporation, which he had collected. He appears to have been allowed a fee of $30 for his services and $10 for his expenses and appellant insists for the reasons hereinafter stated that the court erred in not assessing the costs of the receivership against the appellee.

On the 12th day of September, 1911, the appellant, by its board of directors, filed its answer to the complaint in which each and all of the stockholders of the said corporation joined, denying specifically each and every material allegation of the complaint, save and except that the assets as listed therein were assets; and alleged by way of cross bill that there were other assets not listed; and that appellee had had full management and control of the assets and affairs of the corporation from September, 1908, to July 25, 1911; and during that time had dissipated and wrongfully converted to his own use the assets and funds of said appellant corporation in a large amount for which he had not accounted; and that appellee was a debtor of said appellant corporation and not a creditor; and prayed for an accounting of appellee's administration of its affairs and property, including all payments to himself and all services, for which payments have been made or are claimed; and that the complaint be dismissed for want of equity.

It appears that appellee, the plaintiff below, was secretary and treasurer and general manager, and it was for his services as such that the suit was brought. He appears to have had almost entire and complete control of the affairs of the corporation. He superintended the manufacture of the lime and all operations incident thereto, including its sale, and he collected and disbursed its entire income, checks against its funds being signed only by himself. He claimed to have had employment in

the capacity of secretary at a fixed salary of $20 per month and later that he was elected manager at an additional salary of $50 per month, making a total compensation of $70 per month; and he alleged and testified that six months' salary at that price was due him. The concern appears to have done a very extensive business and appellee handled a large sum of money and had a great many transactions in the name of the appellant corporation. The record in this case is an exceedingly voluminous one and a great many items are in controversy between the parties, and appellant insists that it should have judgment over against appellee for the sum of $4,183.30. Appellant claims that appellee collected a larger sum than he charged himself with; and that he has not properly accounted for the money which he admits he received. Appellee owned a tract of timbered land, located near the kiln, and furnished appellant with a considerable quantity of wood, but both the quantity of this wood and the price thereof is in dispute. The parties also disagree as to the quantity of the lime which was manufactured and the price for which it was sold; they also disagree as to the quantity of lime purchased in the name of the appellant from another corporation also engaged in the lime business and the disposition of the lime so purchased. At the time of the institution of this suit, the books of the corporation showed a number of accounts due it by its customers, but there is more or less controversy about each of these accounts in regard to the amount due by each of these customers and the disposition of the payments made by them on their accounts to the appellant, during the time appellee was in sole control of its affairs. There was also kept by appellant an account under the head of labor and sundries and many items charged thereon are questioned, and this is true also of the supplies bought in the name of the appellant and used by it in its operations. In fact, appellant questions a great many items on the books of the corporation which appellee kept, and it contends that appellee has not given that strict and satisfactory

account which the law requires of him. The evidence is not only very voluminous, but is very conflicting, and the court below undertook to state the account between the parties without referring the cause to a master. The court found that there was nothing due appellee on account of labor or salary at the beginning of this action; and that he was not at any time a creditor of the company, which the court found to be a solvent and going concern and which therefore ought not to be dissolved. The court further found that the appellee had satisfactorily accounted for the funds and property which had come into his hands; and that he was not indebted to appellant in any sum and the cross bill was accordingly dismissed. After fixing the receiver's fee and ordering that it be paid out of the funds in his hands, belonging to the appellant, the court dismissed plaintiff's bill and directed that he pay all costs of the action, except the receiver's compensation and expenses. Both parties saved their exceptions to the court's findings of fact and conclusions of law and its judgment, and each prayed an appeal to the Supreme Court, but the defendant alone perfected an appeal.

Considering the volume of business done by the appellant under the management of the appellee, it must be said that he kept its rather intricate accounts in a very unskilful manner and it will be a very difficult matter, if the record before us fairly indicates the condition of his accounts, to ever know with entire certainty the exact state of accounts between these parties. It appears to us that the chancellor's finding that nothing was due appellee at the time of the institution of this suit is supported by a clear preponderance of the evidence; in fact, we think that he was overpaid on account of salary. This is upon the theory that the evidence shows his total salary was not $70, as claimed by him, and that he should never have credited himself with that amount of salary. The court found the facts to be that appellee had accounted for all the funds and property of defendant which had come into his hands by virtue of his employ-

ment, but we think the finding that appellee owes appellant nothing is contrary to the preponderance of the evidence. We have nothing before us which shows the chancellor's finding upon any of the items and we do not know what sum he allowed appellee for his services in holding that these accounts exactly balanced, but we do know that his finding of fact that neither is indebted to the other is contrary to the contentions of both parties and it would not be possible for this court to strike a balance between these parties, except by going through this entire record and determining item by item what credit each should have, and then striking a balance. If we had a report of a master with the exceptions of the parties thereto, we could know what items are in dispute, but we are favored with nothing of this kind, and the chancellor has made only the general finding that neither was indebted to the other. In regard to cases such as this, Judge EAKIN, speaking for the court, said in the case of *Bryan* v. *Morgan*, 35 Ark. 115: "It was not erroneous in the chancellor to refuse a reference to the master to take and state the account, but it was not good practice. The chancellor may himself take an account, announce the result and decree accordingly. But this practice should be confined to simple and obvious cases in order to save expense to litigants. In complicated transactions, justice can not be well done without a reference." After spending much time on this record, the court has concluded that an injustice might be done one or the other of these litigants in attempting to state an account and strike a balance between them under the conditions of this record and it has accordingly determined and therefore orders that the cause be reversed and remanded with directions to the chancellor to refer this record to a master to state this account; and that in stating this account, he charge the appellee with any excess of salary paid him and also with any funds not affirmatively shown to have been properly accounted for. The judgment of the court assessing all of the costs against the appellee is affirmed, and in addition he will

also be charged with the fees and expense of the receiv-. ership. This is done because we are convinced that there was no authority or justification for this suit or the appointment of the receiver. The court's action, however, in directing that the receiver be paid out of the funds in his hands, belonging to the appellant is affirmed, but the appellant will have judgment over against appel-· lee for this sum.

Under the allegations of the complaint in this cause the appointment of the receiver by the court was a proper thing to do, if some *prima facie* showing of their truth had been made but these allegations have not been sustained by the proof. However, that fact is no reason why the receiver should not have his compensation or should be delayed in its collection. It is frequently necessary and indispensable that a court of chancery in the exercise of its jurisdiction should have the aid of a receiver, appointed by it for that purpose, and these courts must have the right, in the exercise of their discretion, to fix the compensation of these officers, and the source of the compensation should not depend on the hazard of the termination of the litigation. 2 Beach, Eq. Prac., § 1013.

We do not tax the costs of the receivership against appellee solely because he failed to show that the corporation was indebted to him in some sum, but we do so because it appears that he was not a creditor, and that the corporation was not insolvent and that its assets were not being dissipated. High in his work on Receivers lays the rule down as follows:

"If however, the appointment of the receiver was proper in the first instance, even though plaintiffs do not ultimately prevail in the suit, it is within the discretion of the court to allow the receiver payment for his services and expenses out of the proceeds of the litigation, and an appellate court will not interfere with the exercise of such discretion when it has not been abused."

Here the receiver was appointed on the day the complaint was filed and if any showing was made aside from

the recitals of the complaint it does not appear, and must have been *ex parte* and without notice. The right to have a receiver appointed is not an absolute one, and while the chancellor must exercise his discretion in determining whether the appointment should be made, that discretion should be exercised only where a *prima facie* showing has in good faith been made by the party asking that it be done, and only in exceptional cases, should it be done without giving notice to the adverse interests. But when a litigant has caused the expenses of a receivership to be incurred under the circumstances here detailed, it is proper that he be charged with that cost and it is here so ordered.

The decree of the chancery court is therefore reversed for further proceedings in accordance with the directions herein contained.