## MACON v. LeCroy.

Opinion delivered May 30, 1927.

1. PROHIBITION—FUNCTION OF WRIT.—The purpose of a writ of pro-hibition is to keep inferior courts within the limitations of their own jurisdiction, and to prevent them from encroaching on the jurisdiction of other tribunals.

2. PROHIBITION—WHEN GRANTED.—The writ of prohibition is never granted unless the inferior tribunal has clearly exceeded its authority, and the party applying for it has no other protection against the wrong that will be done by such usurpation.

3. PROHIBITION—APPOINTMENT OF RECEIVER.—Prohibition does not lie to prevent the chancery court from determining whether the affairs of a corporation were mismanaged so as to require the appointment of a receiver on the ground of prior proceedings for a similar purpose in another court, since, if the court erred in determining such fact, there was a remedy by appeal.

4. CORPORATIONS—EQUITY JURISDICTION OVER FOREIGN CORPORATION'S PROPERTY.—A court of equity in this State may not dissolve and wind up the business of a foreign corporation, but may take charge of its property within its jurisdiction and enforce the rights of creditors here.

5. CORPORATIONS—JURISDICTION TO APPOINT RECEIVER.—Upon allega-tions of the mismanagement of the affairs of a foreign corpora-tion and of a domestic corporation, to the damage of creditors, the chancery court has jurisdiction to appoint a receiver of such cor-porations' assets, regardless of a prior application in another chancery court for the appointment of a receiver of various cor-porations, including the two above mentioned, in order to prevent the intermingling of their funds to the detriment of stock-holders.

Prohibition to Union Chancery Court, Second Divi-sion; *George M. LeCroy*, Chancellor; writ denied.

*E. B. Dillon, Downie & Schoggen* and *Rose, Heming-way, Cantrell & Loughborough,* for petitioners.

*Mahony, Yocum & Saye,* for respondent.

HART, C. J. This is an application by Randolph H. Macon and W. A. Robinson for a writ of prohibition to the Union Chancery Court for the Second Division to vacate an order of said court appointing a receiver in a designated case, and from proceeding further in such case.

According to the allegations of the petition, on the 6th day of April, 1927, Randolph H. Macon and W. A. Robinson filed a complaint in the Pulaski Chancery Court against the Central States Gas & Electric Company, hereinafter called the Central company, and others, asking for the appointment of a receiver for certain corporations and an accounting between said corporations. The defendants in that case are the Central company, a corporation organized under the laws of the State of Maryland and authorized to do business within the State of Arkansas; the El Dorado Gas Company, hereinafter called the gas company, which is a corporation organized under the laws of the State of Arkansas; and the Morgan Utilities, Inc., which is also a corporation organized under the laws of the State of Arkansas. The principal office of each of said corporations is in Little Rock, Arkansas. S. R. Morgan is a resident of the city of Little Rock, and Hopkins Wade is a resident of El Dorado. They are the managers of each of said corporations, and were the officers in charge of the Republic Power & Service Company prior to the appointment of a receiver for said company by the Pulaski Chancery Court. Plaintiffs are the owners of 222 shares of the capital stock of the Central company and four shares of stock in the gas company. All the rest of the stock of the gas company is owned by the Central company. All of the stock of the latter company, except that owned by the plaintiffs herein, is owned by the Republic Power & Service Company. S. R. Morgan, M. B. Morgan and Hopkins Wade are in practical control of all of said defendant companies. They are the owners of the stock in the Morgan Utilities, Inc., and all the assets of that company are the property of the Republic Power & Service Company.

It is alleged that Morgan had mismanaged the affairs of the Central company and the gas company and had acted fraudulently in the management of the affairs of said companies. It is also alleged that said S. R. Morgan is endeavoring to defraud the creditors and stockholders of the Republic Power & Service Company, the Central

company and the gas company by fraudulent practices in the management of their affairs and by confusing and intermingling their assets in such a way that the real condition of said companies is not known. The complaint is very voluminous, but the gist of it is that S. R. Morgan is the principal stockholder of all of said companies, and is the practical manager and in control of all of them; that he is intermingling and confusing the assets of said corporations so that the creditors and stockholders thereof may be induced to sell their stock or to relinquish their claims for a small sum of money. A summons was issued in said case on said 6th day of April, 1927. The return of the sheriff shows that it was served on the authorized representative of the Central company on the 7th day of April, 1927, and on the receiver of the Republic Power & Service Company on the 9th day of April, 1927. Service was had on S. R. Morgan on the 7th day of April, 1927.

The record also shows that on the 12th day of April, 1927, G. R. Anderson and others filed a complaint in the Second Division of the Union Chancery Court against the Central company, the gas company, Morgan Utilities, Inc., S. R. Morgan and Hopkins Wade. It is alleged that the Central company is a foreign corporation with its principal office in this State located at El Dorado, and that it owns and operates pipe lines for distributing gas in Union County. The gas company is a domestic corporation, and is a subsidiary of the Central company. The gas company is a public utility, and operates a gas distributing system in the city of El Dorado and receives its gas from the Central company. The Morgan Utilities, Inc., is a domestic corporation, owned and controlled by S. R. Morgan. On the 16th day of August, 1926, a majority of the stock of the Central company and the gas company was acquired by Hopkins Wade and S. R. Morgan. The plaintiffs are the owners of shares of stock in the Central company and in the gas company. There is a bond issue in the aggregate sum of $275,000 against two

said companies named in the complaint. One of the plaintiffs is the owner of $7,500 of said bonds.

It is further alleged that S. R. Morgan has willfully diverted the earnings of said companies to other enterprises in which he is interested, and has willfully defaulted in the payment of interest to the bondholders with the avowed purpose of decreasing the value of said bonds so as to enable himself to purchase them at a discount. Other allegations of gross mismanagement of said companies are made in the complaint.

The prayer of the complaint is for the appointment of a receiver to operate the affairs of said companies and to make payment by said companies on their bonded indebtedness. On the 12th day of April a receiver was appointed by said chancery court to take charge of the property of all said companies and to operate the same under the directions of the court. The receiver appointed gave the bonds prescribed in the order appointing him, and duly took charge of the Central company, the gas company and the Morgan Utilities, Inc. On the 12th day of April, 1927, the Pulaski Chancery Court appointed a receiver for the Morgan Utilities, Inc., and on the 18th day of April, 1927, on his motion, said Union Chancery Court made an order vacating its former order appointing a receiver for said Morgan Utilities, Inc., and turned over the property of said company to the receiver appointed by the Pulaski Chancery Court. Said Union Chancery Court refused to vacate its order appointing a receiver for the Central company and for the gas company on the motion of the receiver for said Republic Power & Service Company.

It is the contention of counsel for the petitioners herein that the Pulaski Chancery Court acquired jurisdiction of the property of the Central company and the gas company when an application for receiver for said companies was filed, and that thereafter the Union Chancery Court had no jurisdiction to appoint a receiver for said companies. The office of the writ of prohibition is to restrain an inferior tribunal from proceeding in a mat-

ter not within its jurisdiction, but it is never granted unless the inferior tribunal has clearly exceeded its authority and the party applying for it has no other protection against the wrong that shall be done by such usurpation. *Russell* v. *Jacoway,* 33 Ark. 191.

This court has ever since recognized that the purpose of a writ of prohibition is to keep inferior courts within the limits of their own jurisdiction and to prevent them from encroaching on the jurisdiction of other tribunals. *Weaver* v. *Leatherman,* 66 Ark. 211, 49 S. W. 977; *Finley* v. *Moose,* 74 Ark. 217, 85 S. W. 238; and *District No. 21 United Mine Workers of America* v. *Bourland,* 169 Ark. 796, 277 S. W. 546. In the case mentioned last it was held that a writ of prohibition is an appropriate remedy to restrain the exercise of jurisdiction by an inferior court over a subject-matter when it has none and over parties where it can acquire none. The court, however, in that case recognized the settled rule that the writ is never granted unless the inferior tribunal has clearly exceeded its authority, and the party applying for it has no other protection against the wrong that shall be done by such usurpation. In the case of *Finley* v. *Moose,* 74 Ark. 217, 85 S. W. 238, 109 Am. St. Rep. 74, it was held that, if the existence or nonexistence of jurisdiction depends on contested facts which the inferior tribunal is competent to inquire into and determine, a prohibition will not be granted, though the superior court may be of the opinion that the questions of fact have been wrongly determined by the court below, and that their correct determination would have ousted the jurisdiction.

Now, the Union Chancery Court had the power to determine whether or not the affairs of the gas company and of the Central company were being grossly mismanaged and the assets thereof dissipated to the injury of the creditors of said corporations. If it erred in determining this fact, the error could have been corrected by appeal. A writ of prohibition would not lie. The Central company is a foreign corporation, and the courts of this State have no authority to dissolve and wind up its

business; the rights of courts of equity in this State are limited to taking charge of the property within the jurisdiction of the court and enforcing the rights of creditors here. *Dickey* v. *Southwestern Surety Ins. Co.,* 119 Ark. 12, 173 S. W. 398, Ann. Cas. 1917B, 634, and cases cited.

Under the allegations of the complaint in the Union Chancery Court, the affairs of the Central company were being mismanaged and the rights of creditors were prejudiced, thereby involving the jurisdiction of the court in aid of the rights of creditors. A similar allegation of the mismanagement of the affairs of the gas company, which was a domestic corporation, was also made, and this was the ground for the appointment of a receiver to protect the interests of creditors. *Excelsior White Lime Co.* v. *Reiff,* 107 Ark. 554, 155 S. W. 921. Thus it will be seen that, in ordinary cases, the jurisdiction of the Union Chancery Court to appoint a receiver to take charge of the assets and property of these two corporations in Union County could not be doubted.

It is earnestly insisted, however, that no jurisdiction could attach, because an application for a receivership for said companies was pending in the Pulaski Chancery Court at the time the Union Chancery Court appointed a receiver for said company. According to the allegations of the complaint, the principal grounds for the appointment of a receiver by the petitioners herein in the Pulaski Chancery Court was to protect their interest as stockholders in the Central company and in the gas company. The reason for their action was that S. R. Morgan was intermingling the funds of various corporations which he controlled, including these two corporations, to the detriment of the interests of the stockholders. The chancery court might have concluded that a receiver was not necessary, and that the purpose of the suit would be accomplished by the appointment of a master and by appropriate injunctive orders. In any event, the interests of the claimings in the suit filed in the Union Chancery Court were those of creditors and were not identical with the

interests of the plaintiffs in the suit in the Pulaski Chancery Court. The proof might have developed the necessity of the appointment of a receiver in the Union Chancery Court to operate said properties, although it might or might not have been necessary to appoint one in the Pulaski Chancery Court.

The case is not like that of *Dunbar* v. *Bourland*, 88 Ark. 153, 114 S. W. 467. In that case the suit involved the same subject-matter and was between the same parties. An action was brought at law for the partition of the land involved in that suit, and the court held that a subsequent suit in equity seeking the same relief between the same parties could not be maintained. All the matters involved in the chancery court were necessarily involved in the suit in the circuit court in that case. This is not true as to the case at bar. The issues in the suit in the Union Chancery Court were not necessarily the same as those in the Pulaski Chancery Court. The jurisdiction of the Union Chancery Court depended upon the existence of facts which were proved in that court, and it could not be said in any sense that the issues raised there must necessarily be the same as those raised and determined in the Pulaski Chancery Court.

It follows that the temporary writ is quashed, and the petition is denied.